United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 1, 2006**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

---

m 05-50917

---

FAIR OPERATING, INC.; RALPH E. FAIR, INC.,

Plaintiffs-Appellees,

VERSUS

MID-CONTINENT CASUALTY COMPANY,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Western District of Texas
m 5:04-CV-418

---

Before SMITH and STEWART, Circuit Judges, and CRANE,[*] District Judge.

JERRY E. SMITH, Circuit Judge:[**]

---

[*] District Judge of the United States District Court for the Southern District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published (continued...)

Mid-Continent Casualty Company ("Mid-Continent") brings an interlocutory appeal from an order requiring it to defend Fair Operating, Inc., and Ralph E. Fair, Inc. (collectively "Fair"), in a pollution lawsuit in state court. Finding no error, we affirm the order and remand for further proceedings.

---

[**](...continued)
and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I.

Fair was sued in state court for allegedly allowing pollutants to escape from its oil and gas facilities. The suit, styled *Ayala v. Phillips Properties, Inc.* ("*Ayala*"), alleges, in relevant part, the following:

> The (plaintiffs') properties . . . are contaminated and continue to be contaminated . . . . The contaminants escaped and continue to escape from the defendants' facilities and instrumentalities complained of herein into the air, soil, and groundwater, then migrated and continue to migrate throughout the contaminated area . . . .

Fair holds a general liability policy with Mid-Continent that covers liability for "pollution incidents," which it defines as "the sudden and accidental emission, discharge, release, or escape of pollutants into or upon land or the atmosphere . . . ." The policy requires Mid-Continent to defend Fair against lawsuits alleging covered events. Fair asked Mid-Continent to defend it in *Ayala*, and Mid-Continent refused. Using diversity jurisdiction, Fair sued Mid-Continent in federal court seeking a declaratory judgment requiring Mid-Continent to provide a defense. The case is governed by Texas law.

Fair moved for partial summary judgment, asking the court to look only to the "eight corners" of the insurance contract and the *Ayala* complaint in determining whether there is a duty to defend. Mid-Continent argued that although the *Ayala* complaint alleged an accident, it did not allege a "sudden" emission as required under the policy. Mid-Continent further contended that because the terms of the documents were not specific enough to determine whether a duty to defend had arisen, the court should consult extrinsic evidence. The court initially denied Fair's motion and ordered discovery on the duty to defend.

Fair moved for reconsideration, urging that to inquire into the manner of the accident would be at odds with the defensive position it wished to take in *Ayala*. The district court agreed, reversed its previous order, and granted Fair's request to compel Mid-Continent to provide a defense. Citing authority it had not previously considered, the court found that Texas law requires an insurer to defend where the facts alleged in the complaint *potentially* state a cause of action that falls within the terms of the policy. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004).

The court further held that (absent exceptional circumstances not present here) Texas law required it to look no further than the "eight corners" of the policy and the *Ayala* complaint in ruling on a duty to defend; consideration of extrinsic evidence was therefore inappropriate. The district court certified the issue for interlocutory appeal under 28 U.S.C. § 1292(b), and this court granted leave for Mid-Continent to appeal.

The *Ayala* litigation was settled before oral argument of this case. A justiciable controversy remains, however, regarding the legal fees expended in defense of the *Ayala* litigation before it was settled.

## II.

We turn first to whether, on the face of the *Ayala* complaint and Fair's insurance policy, Mid-Continent had a duty to defend Fair. We review *de novo* the question whether an insurer has a duty to defend. *Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998).

2

The policy covers only "sudden and accidental" incidents of pollution. Mid-Continent argues that because the *Ayala* complaint does not explicitly describe the alleged emissions as "sudden," it does not state a covered claim, and there is no duty to defend. Mid-Continent misreads Texas law.

We have most recently explained Texas's law on the duty to defend in *Northfield*. The duty to defend and the duty to indemnify are distinct and separate duties. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002). In Texas the duty to defend is broader than the duty to indemnify. *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998). An insurer's duty to defend is determined solely by the allegations in the pleadings and the language of the policy.

This is the "eight corners" or "complaint allegation rule." *Northfield*, 363 F.3d at 528. A duty to defend arises "when the facts alleged in the complaint, if taken as true, would potentially state a cause of action falling within the terms of the policy." *Id.* (citing *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir. 1996)). "The insurer is obligated to defend the insured, provided that the petition or complaint alleges at least one cause of action potentially within the policy's coverage." *Id.* "In case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor."[1]

The question is whether the *Ayala* complaint alleges a cause of action potentially covered by Fair's policy. It does.

The complaint alleges the "escape" of contaminants from Fair's control. It does not specify the manner in which the escape occurred,[2] but the allegations are sufficiently broad to encompass sudden and non-sudden emissions. An "escape" can of course be sudden or otherwise. The facts of this case, if further developed, might indicate that the escape was not sudden, but that cannot be determined yet.

A sudden escape of pollutants from Fair's control, which would be covered under the policy, is certainly a *potential* fact that could arise from this case. There is at least doubt whether the factual allegations in the *Ayala* complaint state a cause of action covered by the policy. Under Texas law, a duty to defend arises in such a case, and the cases relied on by Mid-Continent do not alter this conclusion.[3]

---

[1] *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (citing *Heyden Newport Chem. Corp. v. S.*
(continued...)

[1](...continued)
*Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)).

[2] The *Ayala* complaint states as follows: "The nature of the Contamination of the intervenors' properties is inherently undiscoverable because the contamination is not discernable from the surface without specialized training and the use of specialized equipment." The complaint is intentionally vague about how and when the contamination occurred.

[3] The decision in *Mustang Tractor & Equip. Co. v. Liberty Mut. Ins. Co.*, 76 F.3d 89, 92-93 (5th Cir. 1996), interpreting the same "sudden" emissions clause as that found in Fair's policy, is uninstructive. *Mustang Tractor* dealt with the insurer's duty to indemnify rather than its duty to defend. Here, the question is whether Mid-Con-
(continued...)

The district court therefore correctly determined that, based on the "eight corners" of the *Ayala* complaint and Fair's insurance policy, Texas law obligated Mid-Continent to defend Fair in *Ayala*.

### III.

Mid-Continent contends that even if it loses on an "eight corners" analysis, the district court erred by not going beyond the bounds of the complaint and the policy to consider extrinsic evidence relevant to the duty to defend. Mid-Continent urges this court to remand the case for development of such evidence.

We turn, once more, to *Northfield*, in which we described the very limited circum-

stances in which a Texas court might consider extrinsic evidence in ruling on a duty to defend. We concluded that "the current Texas Supreme Court would not recognize any exception to the strict eight corners rule." *Northfield*, 363 F.3d at 531. In the rare event in which a Texas court would consider extrinsic evidence, it would do so only if two conditions were met: (1) "when it is initially impossible to discern whether coverage is potentially implicated," and (2) "when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *Id.*[4]

As to the first element, it is not impossible to determine whether the *Ayala* allegations potentially implicate coverage. As explained above, the allegations fall potentially within the policy's coverage, and a duty to defend therefore arises. Consequently, Texas courts would not allow for the development of extrinsic evidence in this case, and the district court correctly denied Mid-Continent's request to do so.[5]

### IV.

Mid-Continent's remaining issues on appeal are without merit. It has provided this court

---

[3] (...continued) tinent has a duty to defend Fair in *Ayala*, not whether Mid-Continent will ultimately have to indemnify Fair for the settlement amount. Under Texas law, these are separate legal duties that courts approach using distinct legal and factual inquiries.

Mid-Continent also cites *Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192 (5th Cir. 1998), in which we held that no duty to defend existed under Texas law because policy language requiring a sudden emission was not satisfied by the allegations in the complaint. In *Guaranty National*, however, the allegations were of knowing and intentional discharge of pollutants over an extended period of time. We held that the facts as alleged could not support a finding that the pollution in that case was a sudden accident.

The *Ayala* complaint does not allege intentional misconduct by Fair. There is no dispute that Fair's pollution was accidental; the only question is whether it was sudden. Because the facts alleged in the complaint could support a finding of sudden or non-sudden emission, a duty to defend arises under Texas law.

[4] The Texas Supreme Court recently confirmed this court's *Erie* guess by explicitly relying on *Northfield*'s two-part test in rejecting an insurer's request for an exception to the "eight corners" rule. *See GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, No. 04-0692, 2006 Tex. LEXIS 608, at *5-*17 (Tex. June 30, 2006).

[5] Because the first element of the test is not met, we need not consider whether the development of extrinsic evidence would go to the merits of the underlying litigation, a question that is complicated by the fact that *Ayala* has now settled.

4

with no reason to doubt the district court's factual finding that Ralph E. Fair, Inc., is an unnamed insured on the policy as a co-owner or co-venturer. Furthermore, its contention that much of the *Ayala* complaint states uncovered claims is irrelevant. For a duty to defend to arise under Texas law, only one claim must be covered. *See Canutillo*, 99 F.3d at 701.

In summary, the district court correctly determined that Mid-Continent had a duty to defend Fair in the *Ayala* litigation. The order appealed from, accordingly, is AFFIRMED, and this matter is REMANDED for any necessary further proceedings.